**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 27, 2018
Date Decided: October 1, 2018

John L. Reed, Esquire
Peter H. Kyle, Esquire
Harrison S. Carpenter, Esquire
DLA Piper, LLP
1201 North Market Street
Wilmington, DE 19801

Samuel A. Nolen, Esquire
Sarah A. Galetta, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

> Re: *Manti Holdings, LLC et al. v. Authentix Acquisition Co.*, Civil Action No. 2017-0887-SG

Dear Counsel:

This matter involves the sale via merger of Authentix Acquisition Co. (the "Company") by written consent, to a third-party Guernsey[1] entity. The Petitioners seek a statutory appraisal under Section 262 of the DGCL. This brief Letter Opinion will address a narrow predicate issue: whether the Petitioners are barred by contract from exercising their appraisal rights.

The Petitioners are among the stockholders of the Company who lost their shares via the merger. The Company has moved for a judgment under the terms of a stockholders' agreement (the "SA"), to which the Petitioners and the Company

---

[1] The reference is archipelagic, not bovine.

were parties. The SA was entered in 2008 (and amended in 2009) to induce investment in the Company by investors, to whom I will refer collectively as the "Carlyle Group."[2] The Carlyle Group was the majority stockholder and controller of the Company.[3] According to Authentix, the Petitioners are barred contractually from asserting appraisal rights.[4] The Petitioners read the contract differently.[5]

After Authentix was sold, the cash consideration was (or will be) distributed to the various categories of stock via the waterfall provision of the Certificate of Incorporation.[6] The Petitioners and other common stockholders (including the Carlyle Group) will, it appears, receive little or nothing for their equity interest in the Company.

On January 17, 2018, the Petitioners filed a Motion to Dismiss the Respondent's counterclaims, and on January 24, 2018, the Respondents filed a Motion for Partial Summary Judgment on Entitlement Issues. At oral argument, the parties agreed to consider the matter of waiver or estoppel of Petitioner's right to appraisal as submitted on a stipulated record.[7] The facts are undisputed; it remains only to apply the law and the language of the SA to the facts. The nature of the

---

[2] *See* Pet'rs' Opening Br. in Support of their Mot. to Dismiss Ex. A, Stockholder Agreement [hereinafter, "Stockholder Agreement"].
[3] *Id.* at 21; June 13, 2018 Hr'g Tr. at 69:24–70:1.
[4] *See* Resp't's Answering Br. to Pet'rs Mot. to Dismiss at 10–11.
[5] *See* Pet'rs' Opening Br. in Support of their Mot. to Dismiss at 22.
[6] *See* Pet'rs' June 20, 2018 Letter Ex. D at 7.
[7] June 13, 2018 Hr'g Tr. at 3:12–4:2.

motion practice—cross motions and briefing, cross openings and answers—led to the parties' issues and grounds for relief being less than perfectly congruent. Counsel raised issues at argument that were not clearly presented in the briefs, and other issues that were briefed were never mentioned. Accordingly, I allowed short post-argument submissions. I address here only those issues presented at oral argument and in the supplemental submissions; issues not so presented I deem waived.[8]

Because I find the Petitioners contractually bound to refrain from seeking appraisal, the Company's motion is granted, and that of the Petitioners is denied. My reasoning follows.

## I. BACKGROUND

I will recite in this Letter Opinion only those facts and contractual provisions necessary to my decision. Section 3(e) of the SA provides certain contractual rights and duties arising in the context of a "Company Sale"—a defined term that all parties agree occurred here.[9] Section 3(e) provides generally that parties agree to consent to such a sale. It also imposes specific duties. One such duty that a contractually-compliant sale imposes on the Petitioners is set out at Section

---

[8] *See In re Crimson Exploration S'holder Litig.*, 2014 WL 5449419, at *26 (Del. Ch. Oct. 24, 2014) (waiving the plaintiffs' claim where they "did not mention [the claim] in their Opposition Brief or at the Argument.") (citing *Emerald Partners v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003)).

[9] Stockholder Agreement at 12.

3(e)(iv): to "refrain from the exercise of appraisal rights with respect to such transaction." I may state, therefore, two principles that must guide my decision: 1) Assuming that Section 3(e)(iv) is both enforceable and unambiguously applicable under these facts, the Company is entitled to Summary Judgement; and 2) if ambiguities lurk in the SA such that I cannot find it applicable on its face, the SA cannot be construed to bar the Petitioners' right to appraisal. Demonstrating a waiver of the statutory right to appraisal requires language evincing the clear intent to waive[10]—evidence that is not present on this stipulated record outside the language of the SA itself. I turn, then, to the Petitioners' various arguments negating the applicability of Section 3(e)(iv).

## II. ANALYSIS

### A. *The Termination of the SA As Of The Time Of Sale*

The Petitioners point to Section 12 of the SA, which provides, unremarkably, that "[t]his agreement, and the respective rights and obligations of the Parties, shall terminate upon the . . . consummation of a Company Sale. . . ."[11] The parties agree that rights vested before termination are not extinguished by such a provision, but the Petitioners argue strenuously that the SA did not vest a right, or concomitant obligation, to refrain from appraisal, post-close. The rights and duties

---

[10] *Halpin v. Riverstone Nat'l, Inc.* 2015 WL 854724, at *8 (Del. Ch. Feb. 26, 2015).
[11] Stockholder Agreement at 27.

of Section 3(e) arise at the time of (and "in the event that") "a Company Sale is approved by the Board."[12]  The Board approved the transaction at issue at a time when the SA was unquestionably in effect.  Nonetheless, the Petitioners contend that the explicit language of Section 3(e)(iv) compels the conclusion that their right to appraisal was not extinguished, but was only in abeyance, as of the time of sale.  Per Petitioners, once the Company Sale was "consummated," the duty to refrain from appraisal terminated, leaving the Petitioners free to pursue this appraisal action.  The Petitioners point out that the SA could have, but did not, use language that the right to exercise appraisal was "waived" or "void" as of the time of Board approval of the sale; instead, Section 3(e)(iv) imposes a duty on Petitioners to *"refrain" from "exercise"* of those rights.[13]  According to the Petitioners, "refrain" implies live—non-extinguished—rights *from which to refrain*, and thus cannot refer to irrevocably waived rights.[14]  At the least, according to the Petitioners, the language is ambiguous, and thus insufficient to support a finding of waiver.[15]

The Petitioners make a valiant attempt to freight the term "refrain" with more ambiguity than anyone since Arlo Guthrie.[16]  Nonetheless, to my mind, the SA is clear.  No contracting party, agreeing to the quoted language, would consider

---

[12] *Id.* at 12.
[13] *Id.* (emphasis added).
[14] Pet'rs' Opening Br. in Support of their Mot. to Dismiss at 19.
[15] June 13, 2018 Hr'g Tr. at 9:5–6.
[16] *See* Arlo Guthrie, *City of New Orleans* (Reprise Records 1972).

itself free to exercise appraisal rights in light of Board approval of a contractually-compliant Company Sale. In that case, the contracting parties were bound to "assent to" and to "raise no objections against" the sale, and specifically to refrain from exercise of appraisal rights. This language is not ambiguous.

My finding is bolstered by the obvious fact that the "exercise of appraisal rights" with respect to a transaction is meaningless until the transaction is accomplished: under the Petitioners' reading, subsection (iv) is a nullity. That is because, in the Petitioners' view, parties must "refrain" from exercise of appraisal rights *only* pre-close, but at the same time, the exercise to be refrained from could *only* be consummated in the post-sale period in which, per Petitioners, the enforcement of parties' rights and duties is foreclosed. This is not a reasonable reading of the quoted language, which, again, I find unambiguous.[17]

For the foregoing reasons, I find the termination of rights and obligations set out in Section 12 is no bar to the Company's motion.

---

[17] I am unpersuaded by the Petitioners' argument that perhaps the parties meant to exclude appraisal *only* where approval of the transaction was by stockholder vote, and not by consent. They argue that satisfying the demand requirement of Section 262(d) of the statute, which occurs pre-close, must be the "exercise" of appraisal "rights" referred to, preventing the perfection of appraisal rights, but only if Section 262(d) is implicated. I do not, however, think any reasonable reader of the language here would so conclude.

### B. *Petitioners' Contention That The Sale Is Not Contractually Compliant So As To Trigger Waiver Of Appraisal Rights*

The Petitioners contended at oral argument that the duty to refrain from appraisal, and other "Bring Along" duties imposed by the SA on the Petitioners in case of a Company Sale, are conditioned on the "acquisition of Petitioners' [Equity] Securities [being] on the Same Terms and Conditions as the [Equity] Securities held by the Carlyle [Group]" in connection with such transaction.[18] The SA defines "Terms and Conditions" to mean price.[19] Since preferred and common shares did not receive the same value in the distribution of the merger proceeds, Petitioners argue, and because the mix of preferred and common shares held by the parties was dissimilar, the price paid the Carlyle Group and the Petitioners, per share, was not the same. Thus, argue the Petitioners, the Bring Along duties were never triggered. The same-price condition could have been satisfied, again per the Petitioners, by a pre-close conversion of all preferred into common stock. This contention was the subject of supplemental letter briefing by counsel. The parties contest whether the "Same Terms and Conditions" provision, if applicable, operates in the way the Petitioners advocate. I find the Petitioners' reading doubtful. Nonetheless, I need not reach their contention because, even if they read the provision correctly, I find it inapplicable here.

---

[18] Pet'rs' June 20, 2018 Letter at 5.
[19] Stockholder Agreement at 7.

The pertinent facts are that the sale was by merger, and that the merger agreement did not address distribution, which instead was, or is to be, pursuant to a waterfall provision in the company charter.[20] As the Respondents point out, under the SA, a "Company Sale" of the type at issue here may be either by "merger" *or by* "sale or transfer of the Company's capital stock."[21] "Equity Securities" is defined as company stock or options.[22] Where, as here, the Board has approved a Company Sale, the Petitioners are bound to consent to the transaction. In addition, where "any such transaction is structured as a sale of Equity Securities"—that is, as a sale of stock—the non-Carlyle stockholders must "take all action" to assist the consummation of the transaction required by the Carlyle Group or the Board. The latter requirement is conditioned, however, on the sale of Equity Securities being at the same price enjoyed by the Carlyle Group. In other words, the SA differentiates between Company Sales 1) by merger, with the fiduciary protections that entails, in which case the stockholders must consent and raise no objections to the Sale, and 2) a Company Sale by transfer of Equity Securities. In the latter case, the SA imposes an additional affirmative duty on stockholders to take action in aid of the Sale, *so long as* the price per share is the same.

---

[20] *See* Pet'rs' June 20, 2018 Letter Ex. D at 7.
[21] Stockholder Agreement at 4.
[22] *Id.* at 5, 7.

8

I conclude that the plain terms of the SA impose the "same Terms and Conditions" provision, and the resulting affirmative duty of cooperation, on the parties only where a sale is accomplished by an agreement by the Carlyle Group to sell its stock. Such a sale may implicate drag along duties as well as cooperation duties on the minority stockholders.[23] The additional duties are imposed only where those stockholders are protected by receiving for their shares the same consideration given for the stock of the Carlyle Group. By contrast, where the Company Sale is accomplished by merger, the additional duties are not imposed and the "Same Terms and Conditions" provision is inapplicable. Here, the Company Sale was by merger approved by the Board.

I conclude that the Petitioners were bound contractually to consent and not object to the sale, which general duty includes a duty "refrain from exercise of appraisal rights."

*C. The Company May Enforce The SA*

Finally, the Petitioners argue that, even if the SA embodies an enforceable waiver of appraisal rights, it is nevertheless not enforceable *by the Company*.[24] The Company was made a party to the SA, presumably because of a determination by the Board that attracting capital was in the interest of the Company. The Board

---

[23] *Id.* at 10–12.

[24] *See* Pet'rs' Answering Br. in Opp'n to Resp't Mot. for Partial Summ. J. at 20.

approved this merger as a Company Sale, and notably, the Petitioners have not brought an action against the directors for breach of fiduciary duty or breach of contract. Where, as here, a Company Sale has taken place, none of the signatories to the SA, other than the Company itself via its purchasers, have an interest in enforcing the contract. Specifically, should a party violate the duty to refrain from seeking appraisal, the petition would be filed on, and any duty to pay would fall on, the Company.[25] Presumably, the ability to avoid appraisal would make the Company more attractive to potential buyers, a consideration surely contemplated by the parties to the SA. The SA precluded sale of the Petitioners' stock absent a Company Transaction, so all the Petitioners, as parties to the SA, knew they would be bound by the SA at the time of any Company Sale.

Nonetheless, the Petitioners claim the Company is precluded as a matter of public policy from enforcing obligations under the SA. They argue that DGCL Section 151(a) requires limitations on classes of stock to be set out in, or derived from, the corporate charter. Enforcing the SA would, per Petitioners, limit the rights to appraisal that inhere in shares of Company stock; in other words, enforcement would impermissibly permit the Board to impose a limitation on

---

[25] *See* DGCL§ 262(f).

classes of stock by contract, in contravention of the intent expressed in the statute.[26]

In my view, enforcing the SA is not the equivalent of imposing limitations on a class of stock under Section 151(a). Here, the corporation determined it was in the corporate interest to entice investment. It, and its stockholders individually, all entered an agreement with the Carlyle Group that was presumably to the benefit of all parties. The parties, including the Company, did not transform the Petitioner's shares of stock into a new restricted class via the SA; instead, individual stockholders took on contractual responsibilities in return for consideration. One set of these responsibilities was the Bring Along rights through which the Carlyle Group could facilitate an exit, which included the obligations on stockholders arising in case of a Company Sale. Those obligations include the obligation to refrain from appraisal—an obligation only the Company would be in a position to enforce. The SA, in other words, did not restrict the appraisal rights of the classes of stock held by the Petitioners; instead, the Petitioners, by entering the SA, agreed to forbear from exercising that right. I find, therefore, that the Company, in seeking to enforce the SA, is not in contravention of the DGCL or public policy under these facts.

---

[26] *See* Pet'rs' Answering Br. in Opp'n to Resp't Mot. for Partial Summ. J. at 22.

## III. CONCLUSION

The Petitioners agreed in the SA to consent to and not oppose a Company Sale approved by the Board, a duty that specifically included forbearance from exercise of appraisal rights. For the forgoing reasons, the Respondent's Motion for Determination of Entitlement to Appraisal and Partial Summary Judgment on Entitlement Issues is granted, and the Petitioners' cross-motion is denied. The parties should provide an appropriate form of order, and inform me what issues, if any, remain.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III